THE STATE OF IOWA, Appellee, *v.* ELMER NOWELLS,
Appellant.

**Evidence:** DYING DECLARATIONS.  Dying declarations are only ad-
missible where the person is actually dying or suffering from
a mortal wound and is fully conscious that death must soon
follow.  Evidence held to show a realization of impending
death.

**Instructions.**  Error cannot be based on a refusal of instructions
which are embodied in those given and are correct state-
ments of the law, though possibly lacking in explicitness and
definiteness, which objection the requested instructions did
not cover.

**Demonstrative evidence:** HARMLESS ERROR.  On a trial for murder
in which there was a defense of suicide, the introduction of
demonstrative evidence having no bearing on the question of
whether the wound from which deceased died was self-in-
flicted or was received at the hands of defendant, is held to
have been without prejudice.

**Same.**  On the question of suicide by means of a revolver shot,
evidence showing little or no powder stain upon the cloth-
ing of deceased at the point where the bullet entered his body,
and pieces of decedent's clothing through which shots from
the same revolver were fired at about the distance the weapon
must have been held from the body of deceased in case of
suicide, are competent evidence.

**Same:** DISCRETION OF COURT.  The admission of experimental evi-
dence is largely discretionary, and the ruling of the trial court
upon the competency of the same will not be disturbed, unless
such discretion has been abused to the prejudice of the com-
plaining party.

**Experimental evidence:** EXTENT OF SIMILARITY. The fact that the conditions under which an experiment is made are not an exact reproduction of those into which an inquiry is being made will not render the evidence incompetent; it is sufficient if there is a general similarity, as unlikeness in minor particulars goes to the weight of the evidence and not its admissibility.

**Evidence:** ORDER OF INTRODUCTION: REBUTTAL. On a prosecution for murder the State may introduce any competent evidence tending to disprove the theory of suicide, to which the defendant has testified, even though it may also tend to make out the State's main case.

**Non-expert evidence:** CONCLUSIONS. A non-expert witness cannot state as his conclusion that a decedent was delirious while making a dying declaration without stating any facts as the ground of his opinion.

**Admission of evidence:** MATERIALITY. It is proper in a criminal case dependent largely upon circumstantial evidence, for the court to exercise liberality on behalf of the accused in admitting evidence of each circumstance which may fairly serve to explain away the damaging inference to be drawn from the State's case; but this should not go to the extent of permitting clearly irrevelant matter, which could only serve to divert the attention of the jury from the question they are to try.

**Same:** REMOVAL OF PREJUDICE. Ordinarily any prejudice arising from the admission of improper evidence is cured by its withdrawal and a direction to the jury not to consider the same; and such will be the presumption, unless the prejudice is of that peculiarly aggravating character which can not be removed by proper order and instruction of the court.

**Argument:** MISCONDUCT. Although in argument counsel may transgress the bounds of good taste in criticism of certain witnesses, yet, it will not of necessity amount to such misconduct as to call for a reversal of the judgment.

*Appeal from Pottawattamie District Court.*— HON. A. B. THORNELL, Judge.

TUESDAY, DECEMBER 11, 1906.

REHEARING DENIED, MONDAY, JUNE 10, 1907.

THE defendant was convicted of the crime of murder in the second degree, and appeals.— *Affirmed.*

*Turner & Cullison,* for appellent.

*Chas. W. Mullan,* Attorney-General, and *L. De Graff,* Assistant Attorney-General, for the State.

WEAVER, J.— The defendant was convicted upon an indictment charging him with the murder of Le Roy Addison, who died of a pistol shot wound on or about September 15, 1905. It is not seriously contended, nor could it well be argued, that the verdict of guilty is without sufficient support in the evidence. We shall not attempt to rehearse the testimony in great detail. In a general way it may be said to have been shown with more or less certainty that appellant and the deceased were old acquaintances, and, prior to their meeting at the time of the alleged murder, had been on friendly terms. Both were addicted to the excessive use of intoxicants. On the morning of the day before the death of Addison they chanced to meet at the town of Oakland, Iowa, and together took the train to Avoca; the deceased claiming to be on his way to Shelby, and the appellant on his way to Atlantic. At Avoca they seem to have abandoned the idea of going farther at that time, and began making the rounds of the drinking saloons at that place — both becoming intoxicated. That night they slept in a box car standing at the railway station, and, on the next morning, resumed their carousal. At about two o'clock in the afternoon both were drunk. In a saloon, in the presence of several persons, deceased proposed to a witness that they play a game of craps, but, the witness declining the invitation, appellant said he would go and " shoot a few craps " with him. They went out and made their way to a coal shed at the side of the railway track. The shed was open at the end, and they were seen to sit down by the posts which sup-

ported the roof of the structure. One witness swears to seeing them engaged in apparently angry conversation with dice scattered on the floor or ground before them. About the same time, or immediately afterward, another witness saw appellant get up and go back into the shed out of sight. In a very short time after this incident the same witness who was at work in a building near at hand heard a pistol shot, and, going to the window, saw deceased stagger from the shed, and heard him call for a doctor. Hastily raising an alarm by telephone, the witness went to the relief of the injured man, and saw appellant going away in the opposite direction. The witness called to him to come back, and, upon the call being repeated, he returned. Addison was removed to a physician's office, but the hemorrhage from his wound was so excessive that he died in a short time. The bullet had entered his body immediately above the left collar bone at the median line, and, passing down and back, found lodgment under the first rib at the right side. After Addison had been taken to the physician's office, appellant said to bystanders that he (Addison) had shot himself, and offered to go and find the weapon with which the act was done; and repairing to the shed a revolver was found on the floor near the point where the deceased was last seen before the shooting. Appellant concedes that the revolver was his own, but claims to have lent it to the deceased on the day before, although one witness testifies to seeing appellant have it just before the parties left the saloon to go to the coal shed. These circumstances, with others we will not stop to collate, strengthened by a dying statement of the deceased which was admitted in evidence, make up the State's case. It is true that, upon many of the points, we have noted the appellant, as a witness, takes issue with the witnesses for the State, and in some matters he is corroborated by other witnesses, but the truth as to these disputed propositions was a matter for the consideration of the jury.

The first point urged upon our attention is the alleged

error of the trial court in admitting in evidence the dying declaration to which reference has been made. The objec-

1. EVIDENCE: dying declarations.

tion, if we understand counsel, is grounded upon the thought that there was no sufficient showing that the deceased knew the seriousness of his condition, or spoke under a realizing sense of impending death. The record will not support the contention. The wounded man was in fact dying, and the evidence was such that the court and jury could well believe he realized that solemn fact. There is evidence that when appellant was called back to the place where deceased had fallen, and before the physician arrived, deceased pointed him out as the man who shot him. After this he seems to have become reticent on the subject, and, while being carried to the physician's office, and, after arriving there, he refused to answer questions as to the author of his hurt, saying he would not tell unless the doctor told him he was going to die. Finally, being told that he probably would die, and after saying to the bystanders, " Boys, I am going," he made the statement that appellant shot him over a game of craps. Having made this statement, he said, " Tell mother goodbye," and immediately became convulsed in the final death struggle. We may concede all which counsel claim as to the propriety of holding the State to a clear and satisfactory showing, that the alleged dying statement was made under the solemnity of a conviction of impending dissolution, and still we think the proof in this case fills the full measure of the rule. That the dying man's mind was clear is demonstrated by his caution about making the statement until almost his last breath, and the fact that he was beyond hope of recovery must have been as clear to him as to those who were ministering to his needs. We have had quite frequent occasion to consider the law relating to dying statements, and the ruling of the trial court was in harmony with the rules to which we have given adherence. See *State v. Phillips*, 118 Iowa, 669, and cases there cited.

Complaint is also made that the jury were not clearly instructed as to the nature and effect of alleged dying statements. It is said the court should have told the jury, in

2. INSTRUCTIONS.

substance, that, in order to give any weight to such testimony, it must be found that the wounded man was in fact in *articulo mortis,* and that he himself realized his dying condition. In our judgment the instructions given by the court on its own motion embodied the rule substantially as counsel states it. It is true that the court does not adopt the same language used by counsel, nor is the rule, as given, emphasized by being also negatively stated; but in this there was no reversible error. If the instruction, as given, is open to criticism in any respect, it is that it lacks somewhat in explicitness and definiteness of statement, but it is certainly correct as far as it goes, and there was no request for any modification of the charge.

Error is also assigned upon the admission of testimony as to certain experiments made by witnesses for the State. It appears that on two occasions after the alleged homicide

3. DEMONSTRATIVE EVIDENCE: harmless error.

witnesses had taken a piece of the shirt worn by the deceased when he was killed, and fired shots through it from the appellant's revolver at a distance of six to twelve inches, for the purpose of noting the resulting powder marks or burns, if any. On one of these occasions the cloth at the time of the experimental shot was stretched over a piece of fresh pork. These exhibits were allowed to go to the jury. On general principles, we should be better satisfied if the use of the pork in evidence had not been allowed by the trial court; but, under the circumstances here shown, we are unable to see how it could have prejudiced the appellant. The theory of the appellant, as well as of the State, was that Addison died from a shot fired from appellant's revolver, and the exhibition of the pork could not have added to, or detracted from, the weight of that conceded fact. As far as the record shows, no claim was made by the State that the exhibition of the pork was of

any value in determining whether the wound of which the deceased died was received at the hands of the appellant, or was self-incited; and we cannot presume that the jury could have been misled thereby to the appellant's injury.  *Stockwell v. Railroad Co., 43 Iowa, 470.*

As to the cloth through which the shots were fired, and the testimony as to the manner in which the experiments were made, we find no error in their admission.   If the deceased committed suicide, it was physically

4. SAME.

impossible that, in firing the shot, the muzzle of the revolver should have been held more than a few inches from the point where the bullet entered his body, and we would naturally expect to find powder burns, or at least powder stains, upon his shirt at that point.   The testimony tends to show that there were no burns upon the shirt from the shot which inificted the fatal wound, and that the stains, if any, were slight.

Now, the fact as to the distance at which a gun or revolver shot will ordinarily leave these indications upon cloth, and the extent, if any, of these indications when the weapon is fired from a given or assumed distance, is not a matter of such common observation that competent evidence upon the subject may not be admitted, and testimony of experiments of the character of the one here objected to has often been held admissible.   *Boyd v. State,* 14 Lea (Tenn.), 161; *People v. Levine,* 85 Cal. 39 (22 Pac. 969, 24 Pac. 631); *Sullivan v. Com.,* 93 Pa. 297; *State v. Asbell,* 57 Kan. 398 (46 Pac. 770).   Bearing, also, upon the proposition: *Smith v. State,* 2 Ohio St. 512.   Upon the rule as to evidence of experiments in general, see *Tackman v. Brotherhood,* 132 Iowa, 64; *Burg v. Railroad Co.,* 90 Iowa, 106; *Brook v. Railroad Co.,* 81 Iowa, 504; *Railroad Co. v. Burns,* 32 Ill. App. 196; *Clark v. State,* 38 Tex. Cr. R. 30 (40 S. W. 992); *State v. Jones,* 41 Kan. 312 (21 Pac. 265); *Nosler v. Railroad Co.,* 73 Iowa, 268; *Moore v. State,* 96 Tenn. 209 (33 S. W. 1046); *State v. Nordstrum,* 7 Wash. 506 (35

Pac. 382); *Miller v. State,* 107 Ala. 40 (19 South. 37); *Bank v. Young,* 36 Iowa, 44.

It is also generally held that the admission or exclusion of testimony of this nature is largely a matter of discretion, and unless it appear that such discretion has been abused

5. SAME: discretion of court.

to the prejudice of the complaining party, the ruling will not be disturbed on appeal. *Smith v. State,* 2 Ohio St. 511; *Leonard v. Railroad Co.,* 21 Or. 555 (28 Pac. 887, 15 L. R. A. 221) and cases already cited.

It is said that the conditions under which the experiments were made were so unlike those attending the shooting that they are valueless as evidence. Rarely, if ever, can

6. EXPERIMENTAL EVIDENCE: extent of similarity.

an experiment be made where the conditions are in every respect a reproduction of those into which an inquiry is being made. The rule requires only substantial likeness. In this case the revolver was the same, the cloth experimented upon was the same, the distance could not have varied greatly from that at which the fatal shot was fired if the deceased was a suicide. The only circumstance left on which to base an objection is the fact that the State did not undertake to show that the cartridges employed by the witnesses were the same as the particular cartridge from which the bullet was shot into the body of the deceased. Such exactitude of comparison was impossible, and, in view of the general similarity of all the other features of the situation with those attending the alleged homicide, together with the entire absence from the record of anything tending to show that the cartridges fitted for use in the same revolver are made of such different materials as to produce materially different results when fired from the same weapon into the same cloth, we cannot hold that the court erred in permitting the evidence to go to the jury for what it was worth. The fact that the evidence fails to show an entire likeness of circumstances in every respect, will not in all cases render evidence of an experi-

ment incompetent.   If there be a general similarity, the lack of likeness in minor features goes to the weight of the evidence, and not to its admissibility.   *Davis v. State,* 51 Neb. 301 (70 N. W. 984); *Wilson v. State,* 36 Texas Cr. R. 452 (37 S. W. 738); *People v. Phelan,* 123 Cal. 551 (56 Pac. 424); *State v. Flint,* 60 Vt. 304 (14 Atl. 178).

It is further objected that this evidence, if admissible at all, was a part of the State's main case, and the court was in error in permitting its use in rebuttal.   The objection cannot be sustained.   The appellant had testified as a witness in his own behalf that Addison shot himself, and it was competent for the State in rebuttal to put in evidence any fact tending to disprove the theory of suicide committed in the manner described by him.   This rule is none the less applicable because the evidence offered may also tend to make out the State's main case.   *State v. Zimmerman,* 3 Kan. App. 172 (42 Pac. 828); *State v. Yetzer,* 66 Iowa, 423; *McQuinn v. Commonwealth,* 17 Ky. Laws, 500 (31 S. W. 872).

*7. EVIDENCE: order of introduction: rebuttal.*

A witness for the defense who was present in the physician's office when Addison is said to have made his dying statement, was asked by appellant's counsel whether deceased was then " delirious," and, upon objection by the State to the competency of the witness, the answer was excluded.   While this question is perhaps close to the somewhat indefinite border line between matters of which the non-expert witness may and may not be permitted to testify, we are satisfied that the ruling of the trial court was correct.   Delirium is a mental state or condition, a condition for the time being of mental unsoundness and irresponsibility, and while a non-expert may perhaps be permitted to say that the person under inquiry appeared to be wild or incoherent, or exhibited other manifestations which cannot be well described without using terms, involving to some extent expressions of opinion, yet to permit a mere bystander having no professional knowledge

*8. NON-EXPERT EVIDENCE: conclusion.*

or experience, and stating no facts as the ground of his opinion, to give his conclusion whether the words of the deceased, were spoken in delirium, would, in our judgment, go far to abolish the time honored rule which restricts the expression of opinion evidence to witnesses who show special qualifications to speak upon the subject. *Wyman v. Gould,* 47 Me. 159; *Hurst v. Railroad Co.,* 49 Iowa, 80, par. 2; *State v. Stickley,* 41 Iowa, 236.

It was the theory of the defense that Addison was despondent over his relations with a young woman to whom he had been or was engaged to marry, and that this trouble 9. Admission of preying upon a mind rendered weak and EVIDENCE: materiality. maudlin by drink, led him to commit suicide. As bearing upon the proposition, defendant testified that shortly before the killing, and while both were in the saloon, he sang a sentimental song, " We will never speak her name again," and deceased declared that the song did him " more good than all the d—d whisky he could drink." Counsel for defendant asked him to repeat the words of the song to the jury, but, on objection by the State, he was not permitted to do so. The ruling is too clearly right upon familiar principles to require argument. It is undoubtedly proper in cases of this character in which circumstantial evidence plays an important part, for the court to exercise a wide, if not generous, liberality on behalf of the accused in admitting testimony as to every circumstance which, upon any fair or reasonable basis, may serve to explain, or modify, or remove the damaging inferences to be drawn from the case made by the State; but this leniency should not go to the extent of opening the door to matters which are clearly collateral or irrelevant, and serve only to divert the attention of the jurors from the one central question which they are impaneled to try.

On cross-examination of the appellant, the prosecutor asked him if he had not made certain statements in a letter written by him to the girl whose name had been associated

with that of the deceased.   Thereupon the prosecutor was
himself called to the witness stand by the de-
fense, and asked to produce the letter for exam-
ination.   At this point the State made objec-
tion to producing the letter, and withdrew all the evidence
which had been offered on that subject, and the court ordered
it stricken from the record, and directed the jury not to give
it the slightest consideration.   Appellant insists that this ac-
tion upon part of the prosecutor and trial court without re-
quiring the production of the letter to the jury, was prejudi-
cial to the defense, and that the admonition by the court to the
jury could not serve to cure the error.   The contention is not
well founded.   In the first place no testimony of a peculiarly
damaging character had been disclosed concerning the alleged
letter.   The most that can be said of it is that the questions
propounded by the county attorney indicated a claim on his
part that such a letter had been written, but the court very
properly interfered at the threshold and reminded him of the
impropriety of going farther in that direction without pro-
ducing the writing, and when the production was not forth-
coming, all reference to it was stricken from the record and
the jury duly admonished.   If any prejudice could be pre-
sumed from the act of the prosecutor, it was certainly not
of that peculiarly aggravated character which cannot be re-
moved by proper orders and instructions on part of the trial
court.

10. SAME:
    removal of
    prejudice.

Finally, we are asked to reverse the judgment below on
account of alleged misconduct of the county attorney in his
argument to the jury.   We shall not set out the language
excepted to, farther than to say that the at-
torney indulged in severe criticism of certain
witnesses for the defense, and spoke of some of them as
" nomads " and " pals."   Whether, in his strictures, the
prosecutor transgressed the bounds of good taste we need
not consider; but we have no hesitation in saying we find
nothing in the argument which, so far transcends the ora-

11. ARGUMENT:
    misconduct.

torical license which is the heritage of the profession as requires us to interfere with the verdict. The record demonstrates beyond question that the appellant had a fair and impartial trial. He was ably defended, and the trial court was at all points careful to solve the doubtful questions in his favor. He was duly, and we think, justly convicted, and the judgment must stand.— *Affirmed.*