STATE OF IOWA, Appellee, v. WILL GRAHAM, Appellant.

CRIMINAL LAW: Trial—Demonstrative Evidence—Order for Produc-
1. tion. It is discretionary with the court whether a witness shall or shall not produce demonstrative evidence.

EVIDENCE: Opinion Evidence—Allowable Conclusion. The statement
2 that a party "was trying to get away" from another party is an allowable conclusion.

CRIMINAL LAW: Appeal and Error—Harmless Error. An accused
3 may not predicate error on the reception of evidence that his co-indictee (not on trial) "had been tried."

CRIMINAL LAW: Appeal and Error—Immaterial Cross-examination.
4 Error may not be predicated on the cross-examination of an accused on an immaterial and apparently inconsequential matter.

CRIMINAL LAW: Trial—Proper Rebuttal. Testimony offered by the
5 State which actually rebuts in some degree the testimony of the accused is admissible even though it might have been offered by the State in support of the indictment.

Headnote 1: 16 C. J. p. 617; 36 C. J. p. 920. Headnote 2: 16 C. J. p. 749. Headnote 3: 17 C. J. p. 317. Headnote 4: 17 C. J. p. 314. Headnote 5: 16 C. J. p. 868.

Headnote 1: 8 R. C. L. 181. Headnote 2: 11 R. C. L. 570. Headnote 4: 2 R. C. L. 256. Headnote 5: 26 R. C. L. 1041.

*Appeal from Polk District Court.*—O. S. FRANKLIN, Judge.

DECEMBER 14, 1926.

REHEARING DENIED MARCH 22, 1927.

Appellant was jointly indicted with one Frank Brown for the larceny of poultry, under Section 13015, Code of 1924. Appellant was tried separately, and the jury returned a verdict of guilty, and judgment was pronounced accordingly. Graham appeals.—*Affirmed.*

*E. S. Thayer,* for appellant.

*Ben J. Gibson,* Attorney-general, and *Earl F. Wisdom,* Assistant Attorney-general, for appellee.

ALBERT, J.—On the night of October 7, 1924, one Branscomb lost 53 chickens from an inclosed pen on his premises. The following day, Branscomb identified 18 chickens at the Swift & Company poultry house in Des Moines as a part of his flock which had been stolen. These chickens claimed by Branscomb had been sold by appellant to Swift & Company in Des Moines on the same day. Appellant denies that he stole the chickens, and says that he and Brown bought them from an unknown man, and paid cash for them. In the testimony Branscomb identified the chickens, one of which he particularly identified by reason of green paint on its wings. At a previous date he bought these chickens from one Hilleary, who as a witness identifies this particular chicken by reason of the same identification mark. Other witnesses, especially on behalf of the defendant, deny that there was any green paint on the wings of any chicken among those in controversy. This of course makes this question of identification one of fact for the jury.

Witness Branscomb testified, on cross-examination, that he was still possessed of the chicken that was marked with the green paint. The larceny is alleged to have occurred on or about the 7th day of October, 1924. Indictment was returned on the 18th day of November, 1924, and Graham was put on trial on the 25th day of May, 1925. After Branscomb had testified, as above stated, that he was still possessed of the chicken in controversy, appellant requested that the witness Branscomb be required to produce this particular chicken in court. This request

1. CRIMINAL LAW: trial: demonstrative evidence: order for production.

was refused by the court. While it is true that, had the chicken in question been presented and offered in evidence, it would have been admissible, yet demonstrative evidence of this kind is largely, if not wholly, within the discretion of the court, and a refusal of the court to admit the same is not ordinarily held to be error. This must be especially true when it would call for a delay in the trial for the witness to produce the chicken. We do not feel, under these circumstances, that the court abused its discretion in refusing to require the witness to produce the chicken in controversy.

Welch, a detective in the police department, testified that he and Clarkson, another officer, went into a house where Brown and Graham were, and that he found Clarkson scuffling with 2. EVIDENCE: opinion evidence: allowable conclusion. Graham, and that Graham was "trying to get away from Clarkson." This last statement by the witness, that Graham was "trying to get away from Clarkson," was objected to as calling for the conclusion and opinion of the witness. While in one sense this is a conclusion, at the same time it is a permissible conclusion, because the witness would be unable to detail the movements of the respective parties in such a way as to convey definitely the idea, and therefore it is unobjectionable.

During the examination of the witness Clarkson in behalf of the State, he was asked by the prosecuting attorney, with reference to the co-indictee, Brown, this question: "He has been 3. CRIMINAL LAW: appeal and error: harmless error. tried before,—is that right?" Over objection, the witness answered, "Yes." The county attorney then asked: "Where is Brown now?" An objection to this question was sustained by the court. It is to be noticed that nothing in this evidence pointed to either the conviction or the acquittal of Brown, and, the objection to the question as to "where he is now" being sustained, we cannot see how the defendant was prejudiced thereby. Had this evidence shown that Brown was convicted, and in jail or in the penitentiary, the defendant probably would be entitled to complain; but, as nothing of this kind appeared in the record, he was not harmed by this line of testimony.

This witness Clarkson also testified that he went over to Brown's house, and that there were two skillets of chicken frying on the stove. While this evidence was probably not material

or relevant to the issue which was being tried, at the same time its admission, though erroneous, was without prejudice.

The defendant, being a witness in his own behalf, on cross-examination was asked by the county attorney where he bought the whisky, and he testified that he bought it from a stranger whom he could not identify or describe, nor could he tell how far it was from his own house to the place where he met the fellow from whom he bought the liquor. This was all over objection of the defendant. It was on a wholly immaterial issue, and probably the court should not have permitted it; but just how the fact that he bought whisky from a stranger whom he was unable to identify or describe would be prejudicial to the defendant, we are unable to determine.

4. CRIMINAL LAW: appeal and error: immaterial cross-examination.

W. H. Elder was a witness used by the State in rebuttal. His testimony becomes material by reason of the testimony of the defendant, wherein he testified that he and Brown bought these chickens about 9 o'clock in the evening, and at the time he bought them, they were in a box, in a big car with the top down. He testified that he lived next door to Branscomb, and that, on the night in controversy, his attention was called to an automobile which was standing near Branscomb's place, between 11 and 12 o'clock. This testimony is not very useful in the case, but **is one of the incidents** which was admissible for what it was **worth. More than that, in a** colloquy that took place between the attorneys and the court relative to this testimony, the court remarked that it was simply permitted on the theory of rebuttal as to what time the chickens were taken, and he so told the jury. When this explanation was made, defendant's counsel said:

5. CRIMINAL LAW: trial: proper rebuttal.

"The only contention is that it is testimony in support of the indictment; but, if that is the only purpose for which it can be used, I have no further objection."

There was no error here. This was the substance of the testimony of the witness Elder, and it was rebutting testimony. Therefore, the objection of the appellant that the name of the witness Elder did not appear on the indictment is not valid. It many times occurs that testimony used in rebuttal might have been used by the State as direct testimony in the first instance;

yet, if in fact it was not so used, but in reality it does rebut some of the matters testified to by the defendant or his witnesses, it should be classed as rebutting testimony.

Some other questions are discussed, to which we have given attention. We have also reviewed the record, and find no reversible error therein.—*Affirmed.*

DE GRAFF, C. J., and EVANS and MORLING, JJ., concur.