STATE OF IOWA, Appellee, v. EARL COZAD, Appellant.

No. 43435.

JUNE 19, 1936.

C. R. Barnes and James A. Howard, for appellant.

Edward L. O'Connor, Attorney General, Walter F. Maley, First Assistant Attorney General, and Willis A. Glassgow, County Attorney, and Stipe, Davidson & Davidson, for appellee.

MITCHELL, J.—On the 5th day of September, 1935, the grand

jury of Page county returned an indictment, in which it accused Earl Cozad of the crime of larceny of poultry. To the indictment the defendant entered the plea of not guilty. Evidence was offered and the jury returned a verdict of guilty. Defendant, being dissatisfied with the verdict, has appealed to this court.

We must turn to the record to ascertain the facts.

The record shows without any dispute that on the evening of the 3d of June or the morning of the 4th, Cozad brought to the place of business of Curtis Lowe, who was engaged in the purchase of poultry, in Shenandoah, Iowa, two sacks, each containing four white hens. He sold these hens, claiming that he was selling them for Dave Brewer, and the original sales ticket was made out in the name of Brewer. The money, however, was turned over to Cozad, and no claim is made that he did not retain the money.

Shortly after the sale of the chickens, W. C. Aid, who was the constable at Shenandoah, was called to the produce house and examined the hens that Cozad had just sold. Each hen had an aluminum band around one of its legs and on this band there was a number.

A few days later Mr. and Mrs. Ed. Tunnicliff, farmers, who lived nearby, discovered that some of their hens had disappeared, and they went to Shenandoah and examined the hens that Cozad had sold.

For the purpose of keeping a record of the hens that were laying, the Tunnicliffs had put an aluminum band around the legs of the hens, with numbers thereon, and had made a chart, which had the corresponding numbers on it. In this manner the Tunnicliffs were able to keep an account of the hens that were producing and those that were not.

The numbers on the aluminum bands on the legs of the hens that had been sold by Cozad at the produce house corresponded with the numbers on the chart that the Tunnicliffs had. The aluminum bands were the same, and, in addition to that, these white hens had soiled feathers. The Tunnicliffs had oiled or painted their chicken house shortly before, and as the hens were not able to read the sign "fresh paint" and came too close to the oil and paint their white feathers became darkened thereby.

I. Of course, it is not an easy thing to identify a white hen, and one of the errors urged for reversal is that the

hens which were sold by appellant were not identified as the property of or being in the possession of the alleged owners at the time they were obtained by the appellant.

There is no question in this case that the Tunnicliffs were the owners of certain chickens; that some of the chickens they owned had disappeared; that they had always raised Plymouth Rock chickens, and that the chickens which were in the possession of Cozad and which he had sold to the produce man in Shenandoah were Plymouth Rocks; that the Tunnicliff chickens had aluminum bands around their legs; that the Tunnicliffs had a chart showing the numbers on the various bands; that the chickens which Cozad sold had aluminum bands around their legs, and that the numbers on these bands corresponded with the numbers on the chart that the Tunnicliffs had; that the Tunnicliffs had sprayed their chicken house shortly before and that the feathers of their chickens were dirty and soiled; the feathers of the hens sold by Cozad were also soiled. It is difficult, of course, for a person to point out any specific marks of identification on chickens. However, in the minds of the Tunnicliffs these hens were theirs, and they so testified. And certainly, upon the record here presented, there was a question for the jury to decide whether or not the hens which Cozad sold were stolen from the Tunnicliffs.

II. The appellant argues that it was error on the part of the court to admit Exhibit 4, which was the chart prepared by the Tunnicliffs, in January or February of 1934, for the purpose of showing which hens were laying and which were not. The aluminum band with a number was placed around the leg of the hen and that number was then placed on the chart. The Tunnicliffs had prepared the chart. They were familiar with it and knew what it represented. They placed the numbers upon Exhibit 4 for the purpose that these numbers might correspond with the numbers which they had placed upon the leg bands of the respective chickens.

Their testimony was admissible to aid the jury in determining whether or not the chickens actually stolen and found in the possession of appellant were the same chickens that had been in possession of the Tunnicliff family. It was a circumstance which tended to show that the hens found in possession of Cozad were the property of the Tunnicliffs.

III. The appellant also argues that the court erred

in overruling the appellant's motion to direct a verdict upon the various grounds therein urged.

It is true that the evidence in the case at bar is partly direct and partly circumstantial. It would be a rare situation where the state could prove a crime of this character entirely by direct evidence. That would only happen in cases where the thief is caught as he is leaving the chicken house. But generally, in cases of this kind, it is under the cover of darkness that the thief works and the commission of the crime is not discovered until after the thief has left the premises. The owner of the chickens finds that the hens yesterday in his possession are gone today. Either today or tomorrow he finds the stolen property in the possession of a third person. He does not say the third person actually stole his property, but the property which was in his possession and which he knows to be his own on yesterday, he finds to be in the possession of some one other than himself and therefore in unlawful possession of the same.

In the case at bar the Tunnicliffs lost their chickens. Cozad sold some hens (identified by the Tunnicliffs as theirs) to the produce man at Shenandoah. Cozad did not claim they were his and said he was selling them for one Dave Brewer. Dave Brewer denied that they were his hens and that he had told or authorized Cozad to sell them for him.

In the face of such a record, clearly, it was a question for the jury to determine which witnesses it would believe and which it would disbelieve.

IV. The appellant complains that the court erred in giving instruction No. 9, which is as follows:

"Where property has been stolen and such property or part of it is found in the possession of the defendant recently after it was stolen, such fact would be enough if his possession was unexplained to justify you in finding that he is the person who committed the offense charged. But if the facts and circumstances shown by the evidence satisfactorily explain defendant's possession, or raises a reasonable doubt in your mind as to whether the defendant came into the possession of said property, or such part of it, if any, as you find he was in possession of otherwise than by stealing it, then the fact of recent possession, if you find he was in possession of it, or any part

of it, should not be considered by you in determining whether the defendant is guilty or not."

It is the claim that the instruction was erroneous in that the jury was thereby justified in finding that appellant committed the crime charged on that evidence alone instead of being instructed only as to the inference to be drawn, without reference to the other circumstances of the case or lack of evidence, and had the effect of compelling appellant satisfactorily to explain the possession of the property.

In view of the pronouncement in State v. Fortune, 196 Iowa 995, 195 N. W. 740, 741, the exception is not well taken. This court in that opinion, on pages 997 and 998, said as follows:

"Lastly it is claimed that the instruction bearing on the 'possession of goods recently stolen' is not in harmony with our prior decisions. This question has frequently been before this court and it is not strikingly strange that some inconsistency in statement should be found in opinion. In the instant case the jury was instructed in substance that the possession of goods recently stolen from a building by breaking and entering, without reasonable explanation that the goods were obtained otherwise than in the commission of the crime of breaking and entering, is sufficient evidence to warrant the conclusion that the person having such possession is the person who broke and entered the building, unless the evidence showing such possession and the other facts and circumstances as disclosed by the evidence, create a reasonable doubt whether the person so having possession of said goods came into the possession of same otherwise than by the breaking and entering of the building in which such goods were kept.

"Clearly the intent and content of this instruction would not be misunderstood by a jury. Its language is not subject to the criticism which frequently finds a place in our opinions as neither by reference nor inference is there indicated a presumption of guilt to be overcome by the defendant. See State v. Ivey, 196 Iowa 270, 194 N. W. 262. The recent possession by the defendant of goods taken from a building feloniously broken and entered is an evidential fact and unless the evidence in relation to that possession and the explanation thereof creates a reasonable doubt of the defendant's guilt, a jury is justified in returning a verdict of guilty. In other words, if the evidence

shows beyond a reasonable doubt that the goods, wares and merchandise in question were taken at the time of the breaking and entering and that said goods were recently in the possession of the defendant a jury is warranted in finding him guilty. We adhere to the rule concisely stated in State v. Perry, 165 Iowa 215, 145 N. W. 56. It is said, 'If the stolen goods, or a part of them, were found in the possession of the defendant recently after the larceny, this, in and of itself, would be enough, if his possession was unexplained, to justify a jury in finding that he was the man who committed the crime charged.' The defendant is in a position to explain that possession and this circumstance does not relieve the state of its burden of establishing the essential ingredients of the crime charged beyond a reasonable doubt."

And so in the case at bar Cozad was in recent possession of chickens stolen from the Tunnicliffs. He had the right to explain this possession and show that it was legal. He attempted to do so by claiming that he received the chickens from Dave Brewer for the purpose of selling the same for him, but Brewer testified that he did not have the chickens or turn them over to Cozad for sale or any other purpose. Mrs. Brewer also testified to the same facts. Clearly, it was for the jury to believe either Brewer and his wife or Cozad. If the jury saw fit to believe the Brewers, then Cozad utterly failed to establish lawful possession on his part, and the instruction was then entitled to operate against his theory.

■■ V. Appellant claims that the court erred in overruling the objection made to the competency of Dave Brewer as a witness. At the time that he took the stand, counsel for appellant made the objection that he was incompetent to testify in regard to this transaction for the reason that the witness' name is not attached to the indictment and that a synopsis of his evidence is not attached, and that no notice had been served as to the production of such evidence and that such evidence would be a part of the state's main case.

It is true that Dave Brewer and his wife did not appear before the grand jury; that no synopsis of their evidence was attached to the indictment and no notice was served upon appellant. The testimony of the Brewers was offered in rebuttal by the state. Cozad had taken the witness stand, and in explain-

ing how the hens happened to get into his possession he testified that he received them from Dave Brewer for the purpose of selling the same. It was proper for the state to meet this defense with the testimony of Brewer and his wife that they had not turned over the hens to Cozad for the purposes of sale.

In the case of State v. Graham, reported in 203 Iowa 532, on page 535, 211 N. W. 244, 245, this court said:

"Therefore, the objection of the appellant that the name of the witness Elder did not appear on the indictment is not valid. It many times occurs that testimony used in rebuttal might have been used by the state as direct testimony in the first instance; yet, if in fact it was not so used, but in reality it does rebut some of the matters testified to by the defendant or his witnesses, it should be classed as rebutting testimony."

Clearly, in the case at bar the testimony offered was rebuttal testimony. It was offered to deny the story given by the appellant on the witness stand, and, as such, it was properly admitted.

Other errors are argued, all of which have been given careful consideration. A reading of this record convinces us that the appellant has had a fair and impartial trial; that the question of his guilt was one to be decided by the jury; that it was presented to the jury upon proper instructions by the lower court.

It therefore follows that the judgment and decree of the lower court must be, and it is hereby, affirmed.

Chief Justice and all Justices concur.