STATE OF IOWA, appellee, v. JACKIE RAY SCHRADER, appellant.

No. 47908.

(Reported in 55 N.W.2d 232)

JULY 28, 1952.

Hicklin & Hicklin, of Wapello, for appellant.

Robert L. Larson, Attorney General, Earl R. Shostrom, Special Assistant Attorney General, and Robert F. Reaney, County Attorney, for appellee.

Mantz, J.—This appeal is from a judgment rendered by the trial court upon a verdict of the jury finding the defendant, Jackie Ray Schrader, guilty of manslaughter of Clarence Dudley Adey on November 11, 1950. It was the claim of the State that at the time Adey was killed the defendant drove his automobile in a reckless and wanton manner upon a public highway; that while so driving his car collided with decedent's car causing his death. To an indictment returned by the grand jury of Louisa County, Iowa, defendant entered a plea of "not guilty." The

jury returned a verdict of guilty of the charge of manslaughter and the defendant was sentenced to the State Reformatory at Anamosa, Iowa, for an indeterminate sentence of eight years. This appeal followed.

I. In urging reversal defendant assigns various errors. Some are based upon the rulings of the court in the admission or rejection of testimony of certain witnesses and of certain events, actions and conduct of the defendant at and prior to the time of the collision; of evidence of his indulging in drinking beer some time before the collision; of certain instructions given and the overruling of defendant's objections to certain instructions given and the failure of the court to give an instruction dealing with his theory of the case that defendant just prior to the collision was confronted with an emergency. Some of the errors assigned are in part duplications and others are overlapping.

In view of the fact that defendant in this appeal does not urge or argue the question of the sufficiency of the evidence to sustain the verdict of the jury our statement of facts and circumstances as appearing in the record will be somewhat abbreviated. There were approximately twenty witnesses and their testimony covers about one hundred seventy pages. In defendant's brief little reference is made as to where certain testimony could be found in the abstract. This has necessitated a perusal of the entire trial report. In many instances a brief reference is given to the testimony, either offered, admitted or rejected, but where same appears in the abstract is seldom definitely pointed out as to page or lines as provided by our rules. As to form of briefs see rule 344, Rules of Civil Procedure; also section 793.17, Code of 1950. However, we have gone over the entire record and have considered the parts thereof which defendant claims constitute error.

II. The collision which resulted in the death of Adey and another person took place on U. S. Highway No. 61, running north and south through Grandview and Wapello, Iowa, and about three miles south of Grandview. It took place near the crest of a hill. The pavement was a little over eighteen feet wide with an earth shoulder of approximately eight feet. The road for several miles was straight and free from curves. The collision took place about 6:30 p. m. on November 11, 1950. The

weather was clear, the roads were dry and it was dark. Defendant was twenty-three years of age and was then at the home of his folks at Grandview on a furlough from the United States Air Force. Sometime about noon of that day, he, with a friend, Nolan Courtney, drove from Grandview to Wapello. Defendant drove his father's automobile. While at Wapello defendant and Courtney went to a tavern and while there defendant drank some beer. The amount of beer drank by defendant is in dispute. They returned to Grandview late in the afternoon. Defendant ate supper with some friends and then picked up Courtney who was then noticeably intoxicated. Their plan was to return to Wapello to fill a date and to drive to Muscatine to a show. They drove to an oil station to get gas. There Courtney had an altercation with the attendant in which Courtney was the aggressor; with defendant driving they started south. The country is rolling and there are a number of grades on the highway. There had been a football game that day at the State University at Iowa City and there was considerable southbound traffic on the highway. No. 61 is one of the main north-and-south highways of the state. It starts at Dubuque and leaves the state at Keokuk. As defendant came from the north he overtook vehicles traveling in the same direction. As he was passing various cars traveling on a rather long upgrade to the south at the crest of the hill he met the Adey automobile (a Pontiac) traveling to the north. Before defendant reached the point of collision he had gotten out of the west lane and over on the east lane of the highway. Up said hill and in the west lane there was a yellow line to indicate no passing. This yellow line was 1007 feet long and its south end was at or near the crest of the hill. The point of impact of the two vehicles was about five feet north of the south end of such yellow line. There was also a yellow line coming from the south on the east lane which ended near the crest of the hill and was about 991 feet long. The point of impact was a few feet south of the north end of the east yellow line. The point of impact was partly on the east lane and partly on the east shoulder. Adey was driving his car and there were skid marks from the south ninety-one feet and seven inches to the point of the collision. These skid marks were on the east lane. The highway patrolman who came to the scene a short time after

the collision stated that the skid marks were made by the Adey car. He further stated that he found no skid marks made by defendant's car. As a witness the patrolman gave distances arrived at by actual measurements. Adey had in his car his wife and daughter; defendant and Courtney were alone in defendant's car. Both Adey and Courtney were killed in the collision—the other three received severe injuries. There was evidence to indicate that prior to and at the time of the collision defendant was driving his car at a high rate of speed and that in passing a line of cars traveling in the same direction he crowded one of them to such an extent that its driver, in order to avoid being hit, had to turn to the west; that as he approached the top of the hill his car was on the east lane and defendant found himself unable to get back into the west lane; that while so proceeding and just at the time he reached the crest of the hill he met the Adey car traveling in the opposite direction and a head-on collision resulted, wherein Adey and Courtney were both killed. Both vehicles were more or less wrecked.

While there were some conflicts in the evidence, particularly as to distances, speed of defendant's car as it went up the hill and to its crest, we hold that there is in the record ample evidence to sustain the matters above set forth.

 III. One of the errors charged deals with the testimony of Floyd Dean relating to the defendant passing him a considerable distance north of the point of collision. Dean was driving south from Grandview to Wapello. He states that he was driving from sixty to sixty-five miles per hour; that defendant's car came from behind and went around him at an estimated speed of seventy to eighty miles per hour; that as defendant was passing Dean a car came from the south and defendant pulled around ahead of Dean to get back into the west lane and turned in so close that Dean had to apply his brakes and turn to the right shoulder to avoid being hit by defendant's car; that in an effort to secure defendant's license number Dean pursued him and was close behind him and in the east lane when the Adey car came from the south and collided head-on with defendant's car. Dean further stated that just before the collision when he was behind defendant's car, defendant passed another southbound car as it was traveling in the west lane near the crest of the hill.

The evidence shows that the last hill up to the point of the collision was rather long and noticeably upgrade. Dean further testified that after defendant passed him he did not slow up as he was passing cars ahead and that a part of the time he drove in the east lane and that he was in said lane as he approached the top of the hill. He further testified that after defendant's car passed him he observed it from that time until the collision. We think Dean's testimony was admissible to show defendant's movements and conduct, not only at the actual time of the collision but prior thereto. It seems to us that the jury could have found from the evidence of Dean and other witnesses who were traveling south and in the west lane that the defendant was proceeding south in such a manner as to violate the laws of the highway. In its instructions the court advised the jury as to the duty of defendant as to passing other cars and of keeping to the right when approaching the top of the hill where the collision took place. As this is a criminal case the rules governing civil cases have little application. In the case of State v. Graff, 228 Iowa 159, 290 N.W. 97, this court reviewed the holdings as to the rules applicable in manslaughter cases where such an offense was committed by reason of operation of a motor vehicle.

In the instant case the State was not attempting to show that defendant was violating the motor vehicle laws when he passed Dean something like two miles from the point of the collision. The testimony was offered to show the conduct of the defendant a few minutes prior to the collision and the State argues that it was a series of continuous acts which were proper to an understanding of the main event—the collision at the top of the hill. State v. O'Connell, 144 Iowa 559, 123 N.W. 201; State v. Wallack, 193 Iowa 941, 188 N.W. 131; State v. Burzette, 208 Iowa 818, 222 N.W. 394. The question as to whether the evidence offered is relevant is left to the sound discretion of the court. State v. Stafford, 237 Iowa 780, 23 N.W.2d 832, and cases there cited. We hold that Dean's testimony was proper and admissible. When we consider the evidence as to the speed defendant was traveling about two miles north of the collision, and its progress thereafter, the interval between such passing and that of the collision must have been very limited—possibly two to three minutes. It might also be suggested that it was part of

the res gestae. See also State v. Hill, 239 Iowa 675, 32 N.W.2d 398. We find no error here.

IV. Another error urged by the defendant was the submitting to the jury of Instruction No. 11. The principal objection was that it related to inadmissible testimony and restored testimony which had been stricken, and referred to certain evidence offered by the State without reference to the fact that such evidence had been denied by the defendant.

Instruction No. 11 is as follows:

"The question in this case is whether or not the defendant committed such unlawful acts as to show wanton and reckless disregard and indifference for the safety of others who might reasonably be expected to be injured thereby, and this must be determined from all conditions and circumstances immediately before and at the time of the collision. Evidence has been admitted, however, relating to the speed of the car and defendant's acts in passing other cars, at points north of the collision and south of the Grandview corner. Such evidence if and to the extent shown is proper to be considered and given such weight as you believe it entitled to receive, as bearing on the question for determination."

Of course this has reference to the testimony of Dean and other witnesses, including defendant himself, who testified to defendant's speed and the operation of such car after it passed Dean. There were other witnesses who gave testimony along the same line. Some evidence on that point had been stricken and in Instruction No. 17 the jury were expressly told that they were to disregard all statements and evidence stricken out by the court.

We see no merit to this claim of error. It is hardly necessary to state that all instructions must be considered together. State v. Ferguson, 226 Iowa 361, 283 N.W. 917; State v. Anderson, 239 Iowa 1118, 33 N.W.2d 1.

In its instructions the court told the jury that the evidence admitted was to be taken and considered and weighed by them. The jury were instructed to give such the weight they deemed it entitled to. When Instruction No. 11 is taken and construed with others given we hold that it was a correct statement of the law.

■ V. Various other errors urged by defendant relate to the admission of evidence by persons who at the time of and prior to the collision stated that the defendant was out of his own lane on the west side, and his speed; that they saw nothing to indicate that he tried to apply his brakes or to get back into his own lane. Many of these claimed errors are more or less on the omnibus order and few of them indicate where such evidence could be found in the record. In this connection we call attention to the rule of this court on omnibus assignments of error. State v. Mead, 237 Iowa 475, 22 N.W.2d 222; State v. Brodi, Iowa, 200 N.W. 180. The witnesses were telling what they heard or actually perceived. Some gave an opinion based upon their own observation. Some of the witnesses estimated the space between the car in which they were riding and the one ahead. From this the jury could properly infer whether or not there was ample space between the two cars to allow or permit the defendant's car to get into its proper lane. It seems to us that a witness could give an opinion as to whether there was sufficient space for the defendant to get into his own lane. This court has held that a witness may give an opinion which amounts to an allowable conclusion. In Henriksen v. Crandic Stages, 216 Iowa 643, 246 N.W. 913, witness stated that a vehicle seemed to be on the wrong side of the black center mark of a paved highway. This court held that such may amount to an allowable conclusion and was permissible. See also Zellmer v. McTaigue, 170 Iowa 534, 153 N.W. 77; Albaugh v. Shrope, 197 Iowa 844, 196 N.W. 743; State v. Graham, 203 Iowa 532, 211 N.W. 244; 3 Jones on Evidence, Second Ed., 2298–2314. The above had particular application to the testimony of George Hackman, who observed defendant in passing—his speed and position. Objection was likewise made to the testimony of Mrs. Hackman who was riding with her husband, George Hackman. She noted the passing of defendant's car and was asked if it passed the Hackman car slowly or rapidly. Her answer was that it "skimmed by us rapidly." Defendant does not argue the point and submits no authority.

Other witnesses gave testimony as to what they saw and observed prior to and at the time of the collision. Some of it related to the position of defendant's car as it approached the crest of the hill and of seeing a car approaching from the other

direction. Much of it was along the line of that given by Dean and Hackman. Much of it was admitted over objection, and it is of this that defendant complains. We hold there was no error as claimed by defendant with reference to such evidence and its admission.

VI. The defendant urges as error the giving of Instruction No. 10 relative to intoxicating liquor. Said instruction is as follows:

"You are instructed that * * * there is no evidence in this case that the defendant was operating his motor vehicle while in an intoxicated condition at the time of the collision. The evidence which was admitted relating to the use of intoxicating liquor by the defendant * * * was admitted for the sole purpose and for the sole reason that the jury, in determining whether or not the defendant acted in a reckless disregard for the safety of others, may consider whether or not his mind was in anywise affected [by intoxicants]. If you find that such has been proved, you may consider it in that connection and for no other purpose."

The defendant excepted to this instruction and also in his motion for a new trial urged its giving as error. After stating in the exception that there was no evidence that the defendant was intoxicated at the time of the accident, it then told the jury that they might determine from the evidence whether the use of intoxicating liquor as shown by the evidence had affected the mind of defendant. The error charged is that as the evidence showed defendant had consumed two or three glasses of beer some hours prior to the accident the court should have instructed that such consumption of beer would not as a matter of law affect his mind; that such instruction permitted the jury to speculate when as a matter of law he could not have been affected.

We question whether or not the exception urged was sufficient. At any rate defendant argues that the instruction was not proper and bases it upon the claim that beer is not intoxicating liquor. This seems to be the sole basis of the objections and argument made to the instruction. In his brief he states that he recognizes as a rule of law of this state that evidence may be given as to the use of intoxicating liquor by a defendant in cases

of this kind for the purpose of showing whether the defendant's mind or judgment was in 'some respect affected. In the face of this admission there remains but one objection to Instruction No. 10—that beer is not intoxicating liquor and that the instruction should not have used such latter term.

In 48 C. J. S., Intoxicating Liquors, section 1, it is stated: "Except as it may be defined by statute, intoxicating liquor has been held to include any liquor intended for use as a beverage, or capable of being so used, which contains such a proportion of alcohol that it will produce intoxication when imbibed in such quantities as it is practically possible for a man to drink." See People v. Rosseau, 100 Cal. App. 245, 279 P. 819.

In 30 Am. Jur., "Beer", section 8, it is said, "When used in its ordinary acceptation and without qualification, the term 'beer' implies a malt liquor and an intoxicating beverage."

In an Iowa case, State v. McGregor, 266 N.W. 22, the defendant requested an instruction that beer was not intoxicating liquor. The trial court refused the instruction and this court affirmed.

VII. Another error urged by the defendant was the court's refusal to admit the statement given by Dr. Groben relative to defendant's brain injuries. The witness was not available and a statement was prepared by defendant as to what he would testify to in the above respect. Defendant had testified to a loss of memory after the collision and the State had offered no evidence to rebut such testimony. When offered the court excluded it. It was ruled out by the court on the theory that it was offered to show defendant's physical condition—a matter not in dispute. Later, and on rebuttal, the State offered testimony of Major Case. The defendant did not renew the offer of such statement. Again it was a matter of the discretion of the court. Defendant cites no authority to sustain his claim. See State v. McCumber, 202 Iowa 1382, 212 N.W. 137; State v. Graham, supra; 53 Am. Jur., Trial, section 129. There was no merit to such claim.

VIII.· The last two errors urged relate to substantially similar matters and will be considered together. The first relates to the claim of defendant that the court erred in not instructing on defendant's claim or theory that his act in turning out of the line of travel and into the east (northbound) lane was because

of a sudden emergency, and further that the court erred in giving Instruction No. 13 which purported to cover that situation. In effect defendant argues said claims together and cites the same authorities in support of each.

It was the claim of defendant that at or about the time he left Grandview for Wapello, about 6:30 p.m., he took with him his friend Courtney who had been with him earlier in the day and had spent much of the day with him. Defendant states that as they went to the car to start for Wapello, Courtney brought with him a quantity or carton of beer in cans, one of which was then open; that he discovered for the first time that Courtney was intoxicated, although a short time before defendant's mother when advised of the trip to Wapello urged him not to take Courtney along; they went to the oil station to get gas and Courtney started an unprovoked fight with the service-station attendant; defendant had to break up the fight and pulled Courtney off the attendant; they then started toward Wapello. Courtney was intoxicated and wanted to return to Grandview to fight the attendant; used profane language. Defendant claims that while traveling Courtney suddenly and without warning struck or slapped defendant in the face and that this unexpectedly distracted him; that he was then about one hundred feet behind the car ahead; that the blow distracted him and in order to avoid hitting the car ahead he turned to the left and while in that position came to the crest of the hill and had the collision. In his argument defendant states that the blow created an emergency not of his own making. He said that following the blow he did not apply the brakes or slow down when he was proceeding ahead. The evidence shows that the car which defendant passed was the Hackman car, which, under the evidence, was near the foot of a long grade, and according to Patrolman Simpson, who described the grade, the yellow line in the west lane was 1007 feet long and ended at or near the crest of the hill. Dean told his speed when defendant passed was sixty to sixty-five miles per hour and that when defendant passed him defendant was going from ten to fifteen miles an hour faster. Dean said that the Hackman car was about two hundred feet ahead of him and that defendant was pulling in ahead in the east lane and so far as he could see defendant did not attempt to apply his brakes

or slow down as he came to the top of the hill. His speed and operation could be found wanton and reckless, and resulted in the loss of two lives. When both sides rested, the defendant requested Instruction No. 3, which was as follows:

"Evidence has been introduced on the part of the defendant to support the defendant's contention that before the collision he pulled over onto the left side of the pavement because he had been unexpectedly distracted by his companion who was occupying the front seat with him, and that it seemed necessary to drive on the left side of the highway in order to avoid a collision with the automobile proceeding in the same direction ahead of him. Such evidence may be considered by you for the purpose of determining whether at the time the defendant turned to the left side of the highway his act in so doing was a wanton and reckless act or otherwise."

It will be noted that nowhere therein does defendant refer to an emergency. He says that he was "unexpectedly distracted." He does not urge that it caused him to lose control of the car. After the blow he kept on driving ahead. He did not apply his brakes or slow down and we think the jury could find he proceeded forward to the crest of the hill at a high and excessive rate of speed. Under the record the blow or slap, if it did take place, must have been given near the foot of the hill and just before he passed the Dean car. If so, that was over six hundred feet away.

Following the request of defendant the court gave to the jury Instruction No. 13, which is as follows:

"It is defendant's contention that the actions of Courtney just prior to the collision diverted his attention and it seemed necessary for him to drive on the left side of the highway. You are instructed that acts of Courtney, if any, that might have contributed to the death of Mr. Adey, will not relieve the defendant of responsibility, unless such act was an independent intervening cause in which defendant did not participate and which he could not foresee. If you find, therefore, that the death of Mr. Adey was the proximate result of an act by Courtney which was an independent intervening cause in which defendant

did not participate and could not foresee, your verdict will be for the defendant. On the other hand, even though you find that there was some act on the part of Courtney which contributed to the death of Mr. Adey, and that his death was naturally and proximately caused by concurring acts of Courtney and of an unlawful act or acts on defendant's part, as hereinbefore defined, then you should find the defendant guilty."

It seems to us that the instruction given fairly covered the situation under the record. At the time the request for the instruction was made it was because the defendant was "unexpectedly distracted." In his motion for a new trial and in brief defendant refers to it as an "emergency." The defendant had he not been satisfied with the instruction could have requested further elaboration thereof. No such request was made. State v. Schenk, 236 Iowa 178, 18 N.W.2d 169; State v. Wilson, 235 Iowa 538, 17 N.W.2d 138; State v. Kendall, 200 Iowa 483, 203 N.W. 806; State v. Lightfoot, 107 Iowa 344, 78 N.W. 41.

When we examine defendant's testimony we find much of it hazy, vague, evasive and contradictory. He made statements which were at variance with that which he gave as a witness. He seeks to explain this by saying that after the collision he had a loss of memory and some statements which he made were based upon what others had told him. It is not at all surprising that the jury did not believe his story. We think that there was ample evidence in the record that the defendant at and before the collision was driving his car at a high and excessive rate of speed; that he was violating the statutory law dealing with the operation of his car and was proceeding willfully, heedlessly and wantonly and in utter disregard of the rights of others then lawfully upon the highway with the result that two persons were killed and others seriously injured. The evidence in the record was sufficient to warrant the jury to return a verdict of guilty.

We hold that the defendant had a fair trial and that in it there were no prejudicial errors. The case is affirmed.—Affirmed.

All JUSTICES concur.