STATE OF IOWA, appellee, v. KERMIT JOHNSTON, appellant.

No. 50003.

(Reported in 105 N.W.2d 700)

336

October 18, 1960.

Rehearing Denied December 16, 1960.

E. F. McEniry, of Creston, for appellant.

Norman A. Erbe, Attorney General, Marion R. Neely, Assistant Attorney General, and A. Elton Jensen, of Bedford, County Attorney, for appellee.

GARFIELD, J.—Defendant, Kermit Johnston, was indicted for the crime of malicious injury to a vehicle as defined by section 714.11, Code, 1958. He pleaded not guilty, was tried, found

guilty, sentenced to jail for 60 days and has appealed to us.

The indictment charges that defendant maliciously and feloniously injured a vehicle, to wit a tractor belonging to Raymond Bridgewater, by cutting its parts, in violation of Code section 714.11. The pertinent part of this statute provides, "Injury to vehicle * * *. If any person * * * maliciously and feloniously remove, break, unfasten, or injure any part of any vehicle, he shall be imprisoned", etc.

I. Under the first of two errors assigned by defendant it is argued the tractor in question was not a vehicle. This calls for a review of the evidence upon this point.

Raymond Bridgewater's son testifies that on December 30, 1958, about 3 p.m., he saw defendant cutting on his father's tractor with an acetylene torch, a rear wheel was cut and the top of the hood was gone, they were lying on the ground two or three feet from the tractor, when asked for an explanation defendant said he bought the tractor from one John Hansen and exhibited a paper showing the purchase. On cross-examination the witness says the tractor had no battery in it, the coils were old and no good, the tractor would not run, had been disabled for several years and was an antique.

Raymond Bridgewater testifies the tractor was pretty well cut up the next morning, the head and radiator were missing, the night of the 30th defendant called upon the witness, said he had a bill of sale for the tractor but did not have it with him and was sorry for what had happened, the tractor had not been used or started and had been out in the weather, uncovered, since 1936, the witness was saving the tractor as an antique.

The sheriff says defendant claimed to him he had a bill of sale for the tractor from John Hansen of Conway but had lost it, he admitted he cut the tractor with an acetylene torch, the witness was unable to find a John Hansen at Conway.

Defendant testifies he had never been on the Bridgewater farm, never saw the tractor in question, the tractor parts he had in his possession came from his grandfather's place at Gravity.

It is clear this tractor at the time in question was not in condition to be moved by its own power. But this would be equally true of any wagon or buggy. They are not even

designed to be moved by their own power and no repairs would enable them to be so moved. Yet it cannot be denied they are vehicles. Code section 714.11 is not limited in its application to motor vehicles—it applies to any vehicle. Indeed the statute is violated by maliciously and feloniously removing or injuring *any part* of *any* vehicle. There is clear evidence defendant, with such intent, removed and injured parts of this tractor. We think the tractor was a vehicle in the sense in which the term is used in section 714.11.

The word "vehicle" is frequently defined as that in or on which any person or thing is or may be carried from one place to another. It is of course a broader term than "motor vehicle." Webster's New International Dictionary, Second Ed.; United States v. One 1936 Model Ford, 307 U. S. 219, 237, 59 S. Ct. 861, 870, 83 L. Ed. 1249, 1261; Moffitt v. State Automobile Ins. Assn., 140 Neb. 578, 300 N.W. 837, 838; Golding-Keene Co. v. Fidelity-Phenix Fire Ins. Co., 96 N. H. 64, 69 A.2d 856, 859, 12 A. L. R.2d 591, 594, 595; Waddey v. Maryland Casualty Co., 171 Tenn. 112, 100 S.W.2d 984, 986, 109 A. L. R. 654, 657.

The Moffitt case, supra, holds a hay grinder mounted on wheels, with no independent motive power, was a vehicle. The Waddey case, supra, is a like decision as to a homemade wagon pulled by a rope tied to the front end.

Quite in point is State of Missouri v. Ridinger, 364 Mo. 684, 686, 266 S.W.2d 626, 628, 42 A. L. R.2d 617. There defendant was convicted of feloniously tampering with a *motor vehicle* by removing a tire and wheel therefrom without permission. (Quoting from page 619 of 42 A. L. R.2d), "* * * the bus in question had no license plates on it, had been there on the lot 'a while' and had not been used 'for quite a bit'; that the bus was not on the lot for sale but had been discarded and the Motor Company was using parts from the bus 'to repair other vehicles'; that there was no hood over the motor and no left front wheel or tire thereon; and that the bus was not then in a condition to be self-propelled."

The opinion holds (page 624 of 42 A. L. R.2d), "We have concluded that the mere facts, strongly urged upon us by de-

fendant, that the bus had no current state license, that there was no intention of the owner thereof to further use it as a bus and that it was being used as a source of spare parts to be placed in other motor vehicles as occasion therefor might arise, did not destroy the bus as a 'motor vehicle' or convert it into a mere object of public plundering and stripping, and beyond the pale of the law's protection."

It is apparent the Ridinger decision that the bus was a motor vehicle goes further than our holding here that the tractor was a vehicle.

Also in point is this from Halstead v. State, 199 Ind. 397, 400, 155 N.E. 609: "Appellants contend that, as the automobile could not be operated by explosive or other power at the time the motor was taken, they were not guilty of the crime of vehicle taking; and that, if any crime was committed by them in taking the motor, same was larceny. Appellants' theory cannot be adopted. The motor formed part of an automobile constructed so as to be operated by explosive power. The fact that some of the necessary parts had been removed and it could not be operated at that time did not take it out of the class of vehicles named in the act, under which appellants were prosecuted."

See also State v. Tacey, 102 Vt. 439, 150 A. 68, 68 A. L. R. 1353.

II. The second assigned error is the admission in rebuttal of certain testimony of the witness George C. Brennan.

As part of the State's main case the sheriff testified in part, as previously stated, defendant told him he had a bill of sale for the tractor from John Hansen but had lost it. As a witness in his own behalf defendant said he never had any discussion with the sheriff about a bill of sale. In rebuttal the State was permitted to show by Brennan that he was present at the conversation between defendant and the sheriff and defendant said he had a bill of sale for this tractor from some other fellow but could not find it.

We might perhaps dispose of this assigned error by saying there was no objection to the two questions which elicited the above testimony in rebuttal. However, defendant did object, as

not proper rebuttal, to somewhat similar questions previously asked Brennan and the objections were overruled. Defendant's counsel may have considered this a sufficient indication of the court's view on the point under consideration. We are therefore not disposed to base our holding on defendant's failure to renew his objection to the above testimony. We think its admission in rebuttal was not error.

Brennan's evidence was clearly rebuttal. It negatived testimony given by defendant. It is true it might have been offered by the State as part of its main case. But this did not render it inadmissible in rebuttal. "It many times occurs that testimony used in rebuttal might have been used by the State as direct testimony in the first instance; yet, if in fact it was not so used, but in reality it does rebut some of the matters testified to by the defendant or his witnesses, it should be classed as rebutting testimony." State v. Graham, 203 Iowa 532, 535, 536, 211 N.W. 244, 245; State v. Slycord, 210 Iowa 1209, 1217, 232 N.W. 636; State v. Cozad, 221 Iowa 960, 966, 267 N.W. 663; State v. Rutledge, 243 Iowa 179, 196, 47 N.W.2d 251, 261, 262.

State v. Yetzer, 97 Iowa 423, 433, 434, 66 N.W. 737, 740, is closely in point. We there said, "It often happens on a trial, that a party may reasonably suppose that a fact prima facie shown on the direct examination, will stand as unquestioned * * *, with other evidence at hand to sustain it. In such a case, if it is contradicted, the court may properly permit the other party to offer additional evidence. It is a discretionary matter." See also State v. Nowells, 135 Iowa 53, 61, 109 N.W. 1016; State v. Burris, 198 Iowa 1156, 1162, 1163, 198 N.W. 82.

The fact Brennan's name was not endorsed on the indictment did not render inadmissible the testimony given by him in rebuttal. Names of witnesses who testify in rebuttal need not appear on the indictment. State v. McCumber, 202 Iowa 1382, 1383, 1384, 212 N.W. 137, and citations; State v. Smith, 215 Iowa 374, 377, 378, 245 N.W. 309; State v. Cozad, supra, 221 Iowa 960, 965, 966, 267 N.W. 663; State v. Crandall, 227 Iowa 311, 319, 288 N.W. 85.—Affirmed.

All JUSTICES concur.