STATE OF IOWA, Appellee, v. E. B. (LASH) FERGUSON, Appellant.

No. 44475.

FEBRUARY 14, 1939.

REHEARING DENIED JUNE 23, 1939.

McCoy & McCoy and Marion R. Hammer, Jr., for appellant.

John H. Mitchell, Attorney General, Harold J. Fleck, County Attorney, and James A. Devitt, Special Counsel, for appellee.

Comfort & Comfort, Ralph N. Lynch, C. S. Missildine, James P. Irish, Charles W. Bowers, Oral S. Swift, Cullison & Hurley, Gerald O. Blake, Swift & Swift, and H. E. DeReus, Amici Curiae.

MILLER, J.—This is the third occasion upon which this appellant has invoked the jurisdiction of this court herein. For our prior decisions, see State v. Ferguson, 222 Iowa 1148, 270 N. W. 874; Ferguson v. Bechly, 224 Iowa 1049, 277 N. W. 755. The facts developed at the trial herein are so similar to those developed on the first appeal that it is only necessary to briefly review them herein.

On July 5, 1935, the county attorney's information was filed, charging appellant with stealing eleven head of cattle belonging to one Vernie Braden, in violation of section 13015 of the Code. Appellant was tried and convicted in the district court of Mahaska county. On appeal to this court, the conviction was reversed, solely because of errors in excluding certain testimony and refusing an instruction, it being determined that the evidence of the state, if believed, was abundantly sufficient to sustain a conviction. See State v. Ferguson, supra.

Procedendo was sent down from this court on January 25, 1937. The case was assigned for trial on February 17, 1937, for March 1, 1937. Ten days later appellant objected to trial because of the pendency of his petition for rehearing in this court, and also moved for a change of venue. On March 1, 1937, when the cause came on for trial, the plea to the jurisdiction, because of the pendency of the petition for rehearing, was

overruled, but the motion for change of venue was sustained, and the cause was transferred to Jasper county for trial.

An April 9, 1937, the procedendo from this court was recalled. On May 8, 1937, the petition for rehearing was overruled, and a second procedendo issued from this court May 12, 1937. On September 20, 1937, the case was assigned for trial in the Jasper district court. Appellant then filed a motion to dismiss, contending he had been denied a speedy trial as provided by section 14024 of the Code. The motion was overruled. Appellant applied for and secured a writ of certiorari to review such ruling. The writ was annulled by this court on February 15, 1938. See Ferguson v. Bechly, supra.

The cause again came on for trial in Jasper district court on March 5, 1938, at which time appellant filed a second motion to dismiss, again asserting that he had been denied a speedy trial as guaranteed him by the Constitution (Article I, sec. 10) and as provided by sections 14024 and 14025 of the Code. Resistance was made on the ground that the position taken by this court in the proceedings in certiorari were conclusive against the motion. The state also filed a motion to strike appellant's motion, asserting that the question had been fully determined by the opinion of this court in the certiorari proceedings. The trial court ruled that, while appellant was prosecuting the writ of certiorari, the State was not in a position to proceed with trial until that question was decided by this court and sustained the State's motion to strike appellant's motion to dismiss. The cause proceeded to trial, resulting in appellant's conviction. From such conviction, appeal was perfected to this court, asserting nine assignments of error.

I. Appellant's first assignment of error challenges the correctness of the ruling of the trial court, sustaining the motion to strike appellant's motion to dismiss. Careful examination of the opinion of this court in the certiorari proceedings, Ferguson v. Bechly, supra, convinces us that the position there taken by us was conclusive upon the trial court and decisive of appellant's first assignment of error. There is no merit therein.

II. In the course of the trial, appellant did not take the witness stand in his own behalf. In the opening argument by the State, the county attorney commented on that fact. Counsel for appellant objected on the ground that it was error

for the county attorney to make such comment and to convict appellant on such an argument would be contrary to and in violation of section 9 of Article I of the Constitution of Iowa, which provides that no person shall be deprived of life, liberty or property without due process of law, and contrary to section 13890 of the Code, which provides that defendants in all criminal proceedings shall be competent witnesses in their own behalf, but cannot be called as witnesses by the State. Appellant's objection was overruled. Such ruling is made the basis for appellant's second assignment of error.

In determining whether or not the provisions of section 13890 of the Code, to the effect that a defendant in a criminal proceeding shall be a competent witness in his own behalf but cannot be called as a witness by the State, forbids the county attorney commenting upon the fact that the defendant has not seen fit to avail himself of the privilege of testifying in his own behalf, it is necessary to briefly consider the legislation in this State on the right of a defendant to testify.

Originally, a defendant in a criminal case was not competent to testify in his own behalf. Section 2390 of the Code of 1851 provided that no person who had a direct, certain, legal interest in the outcome of a suit was a competent witness unless called by the opposite party. Said section of the Code of 1851 was modified by section 3980 of the Revision of 1860, which provided that a party to an action was both competent and compellable to give evidence, except as otherwise provided. Section 3981 of the Revision of 1860 provided that nothing contained in the preceding section should render a defendant in a criminal proceeding competent or compellable to give evidence, either for or against himself. The same provision was contained in section 4556 of the Code of 1873. The statutory provision, rendering a defendant in a criminal case incompetent to testify in his own behalf, was recognized and enforced by this court. State v. Laffer, 38 Iowa 422; State v. Bixby, 39 Iowa 465. With the defendant in a criminal case declared to be incompetent to testify in his own behalf, obviously his failure to testify would not be a matter upon which the county attorney could comment. Section 1 of chapter 168 of the Acts of the 17th General Assembly, which is codified as section 5484 of the Code of 1897, provided that defendants in criminal proceedings should be competent witnesses in their own behalf, but could not be called

by the State, and, should a defendant not elect to become a witness, such fact should not have any weight against him on the trial, and,should the county attorney comment on such fact, it would be error in and of itself sufficient to entitle the defendant to a new trial. The fact, that the failure to testify should not have any weight against the defendant on the trial, in and of itself, was sufficient to prohibit comment thereon by the county attorney. Wilson v. U. S., 149 U. S. 60, 13 S. Ct. 765, 37 L. Ed. 650.

In the Code of 1924, the first clause of section 5484 of the Code of 1897, to the effect that defendants in criminal cases shall be competent witnesses in their own behalf, but cannot be called as witnesses by the State, was made a separate section, to wit: section 13890, and this is still the law of this State, being section 13890 of the Code of 1935. The second clause of section 5484 of the Code of 1897 to the effect that, should a defendant not elect to become a witness, that fact shall not have any weight against him, nor be the subject of comment by the county attorney, appears as section 13891 of the Codes of 1924 and 1927, but was repealed by chapter 269 of the Acts of the 43d General Assembly, in 1929.

In the case of State v. Stennett, 220 Iowa 388, 395, 260 N. W. 732, 736, this court was called upon to construe the effect of the action of the 43d General Assembly, ch. 269, in repealing section 13891 of the Code. We there state:

"It is further insisted that the jury were guilty of misconduct in their deliberations because they discussed the fact, brought out in the county attorney's argument, that the defendants, and each of them, objected to testifying in their own behalf; and that the county attorney pressed this question home to the jury in a very forceful way. This objection is not tenable because of the fact that the remarks of the county attorney are not made of record and no objection was made thereto at the time of the argument. Secondly, while there are numerous cases under a pre-existing statute that hold that it is reversible error for the county attorney to refer to the fact that a defendant has not taken the witness stand or testified in his own behalf, the statute (Code 1927, section 13891) which was the basis of these holdings was repealed by the Forty-third General Assembly (chapter 269), and it is now no longer error for the

prosecuting attorney to refer to the fact that the defendant has not taken the witness stand to testify in his own behalf.''

Appellant contends that the interpretation this court makes of the legislative history on this subject was dictum because of the fact that the remarks of the county attorney were not made of record. Conceding, for the purposes of this case, that the above language of this court should be so construed, nevertheless, we now hold that the interpretation of the legislative history there made by us is sound and we now adhere to it. Accordingly, in so far as the statute law of this State is concerned, there is no merit in appellant's second assignment of error.

This brings us to the question whether or not section 9 of Article I of the Constitution of this State, providing that the right of trial by jury shall remain inviolate, and no person shall be deprived of life, liberty or property without due process of law, prohibits the county attorney from commenting upon the fact that a defendant in a criminal case has not testified in his own behalf. This constitutional question was not raised in the case of State v. Stennett, supra, and we are unable to find any prior decision of this court passing upon the question. This is doubtlessly explained by the legislative history above reviewed which, until 1929, prohibited the county attorney from commenting upon the failure of a defendant to testify in his own behalf. Since then, apparently, the bar of this state has considered the matter one to be determined by our statute law. Hence this is the first case to require us to interpret section 9 of Article I of the Constitution of this State in its possible bearing upon the right of a county attorney to comment upon the failure of a defendant to testify in his own behalf.

Since the provisions of section 9 of Article I of our Constitution are quite similar to the latter provisions of the 5th Amendment to the Constitution of the United States, it might be considered that the decisions of the supreme court of the United States would include some construction of the 5th Amendment analogous to the construction we are now asked to make. However, Congress has enacted that, in criminal proceedings, the defendant shall, at his own request but not otherwise, be a competent witness and his failure to make such request shall not create any presumption against him. Act of

March 16, 1878, Chapter 37, 20 Stat. 30; 28 U. S. C. A. section 632. This statute is similar to section 5484 of our Code of 1897. The fact, that the failure of the defendant to testify in his own behalf creates no presumption against him, is sufficient to prohibit the district attorney commenting upon a defendant's failure to testify in his own behalf. Wilson v. U. S., supra. This federal statute explains the absence of any decision of the supreme court of the United States, construing the 5th Amendment, in so far as it might possibly have any bearing upon the right of a district attorney to comment upon the failure of a defendant, in a criminal case in federal court, to testify in his own behalf.

However, the 14th Amendment to the Constitution of the United States, also contains a provision to the effect that no person shall be deprived of life, liberty or property without due process of law by any state. If appellant's contention, that section 9 of Article I of our Constitution forbids the county attorney commenting upon the failure of appellant to testify in his own behalf, is sound, it would seem obvious that the same construction would be required of the 14th Amendment to the Federal Constitution. Accordingly, we consider that the decision of the supreme court of the United States, in the case of Twining v. New Jersey, 211 U. S. 78, 29 S. Ct. 14, 25, 53 L. Ed. 97, has an important bearing upon the decision here required of us.

In the Twining case, the defendant had been convicted in a criminal proceeding in the courts of New Jersey. He had not availed himself of the privilege of testifying in his own behalf. The trial court, in accordance with the decisions of the courts of New Jersey, commented upon the fact that the accused had not testified in his own behalf. On appeal to the supreme court of the United States, it was asserted that the comments so made violated the 14th Amendment. The supreme court reviewed quite exhaustively its decisions in regard to the meaning of due process of law, and held that such comment did not constitute denial of due process. After making such review of its decisions, the supreme court states as follows:

"Even if the historical meaning of due process of law and the decisions of this court did not exclude the privilege from it, it would be going far to rate it as an immutable principle of

justice which is the inalienable possession of every citizen of a free government. Salutary as the principle may seem to the great majority, it cannot be ranked with the right to hearing before condemnation, the immunity from arbitrary power not acting by general laws, and the inviolability of private property. The wisdom of the exemption has never been universally assented to since the days of Bentham, many doubt it to-day, and it is best defended not as an unchangeable principle of universal justice, but as a law proved by experience to be expedient. See Wigmore, Ev. § 2251. It has no place in the jurisprudence of civilized and free countries outside the domain of the common law, and it is nowhere observed among our own people in the search for truth outside the administration of the law. It should, must, and will be rigidly observed where it is secured by specific constitutional safeguards, but there is nothing in it which gives it a sanctity above and before constitutions themselves. Much might be said in favor of the view that the privilege was guaranteed against state impairment as a privilege and immunity of national citizenship, but, as has been shown, the decisions of this court have foreclosed that view. There seems to be no reason whatever, however, for straining the meaning of due process of law to include this privilege within it, because, perhaps, we may think it of great value. The states had guarded the privilege to the satisfaction of their own people up to the adoption of the 14th Amendment. No reason is perceived why they cannot continue to do so. The power of their people ought not to be fettered, their sense of responsibility lessened, and their capacity for sober and restrained self-government weakened, by forced construction of the Federal Constitution. If the people of New Jersey are not content with the law as declared in repeated decisions of their courts, the remedy is in their own hands. They may, if they choose, alter it by legislation, as the people of Maine did when the courts of that state made the same ruling. State v. Bartlett, 55 Me. 200; State v. Lawrence, 57 Me. 574; State v. Cleaves, 59 Me. 298, 8 Am. Rep. 422; State v. Banks, 78 Me. [490] 492, 7 Atl. 269; Rev. Stat. chap. 135, §19.''

The New Jersey rule, which was involved in the Twining case, is illustrated by the decision in the case of State v. Ru-

benstein, 136 A. 597, 5 N. J. Misc. 387. In that case, the appellant challenged the following instruction of the trial court:

"The law of our state in regard to defendants taking the stand is that a party in a case is competent, but not compellable, to be a witness in his own behalf, but his failure to do so raises no presumption of his guilt. Where, however, there is direct evidence to connect the accused with the crime, and by his own testimony he could have established an alibi or denied the allegations, his failure to do so may be considered by the jury as an inference against him."

In holding that there was no error, the court states as follows:

"The pertinent part of this charge is identical with the charge approved by this court in the case of State v. Schilling, 95 N. J. Law [145] 154, 112 A. 400. The situation where you have a right 'to draw inferences against him.' So, to the same effect is Parker v. State, 61 N. J. Law [308] 314, 39 A. 651. These cases are cited, on this point, with approval, in the case of State v. Kisik, 99 N. J. Law [385] 387, 125 A. 239, by the Court of Errors and Appeals. In that case, it was said, the doctrine of the Parker Case has come to be the settled law in this state. There the words 'a strong inference' are used by Chief Justice Magie."

It will be noted from the foregoing that the New Jersey rule differs from the rule announced in Wilson v. U. S., supra. Under the federal statute, which provides that failure to testify shall not create any presumption against the defendant, the United States supreme court has held that no comment upon the failure to testify may be made to the jury. The New Jersey court, however, holds that, while no presumption of guilt is created by the failure to testify, nevertheless, there is an inference against the defendant which is proper subject for comment to the jury. Notwithstanding the fact that the New Jersey rule is different from that of the federal courts, the United States supreme court held that such difference of opinion is warranted and that the comment made to the jury does not constitute denial of due process.

The legislative history in the state of Maine, which is referred to in the above quotation from the Twining case, is

briefly reviewed by the Maine court in the case of State v. Banks, 78 Me. 490, 492, 7 A. 269, 270, as follows:

"In 1864, for the first time, a person charged with commission of a criminal offense, was made, 'at his own request and not otherwise, a competent witness.' St. 1864, c. 280. After this statute took effect, county attorneys, when the accused did not elect to testify, were allowed in argument to comment on the fact to the jury. State v. Bartlett, 55 Me. [200] 220; State v. Lawrence, 57 Me. 574; State v. Cleaves, 59 Me. 298, [8 Am. Rep. 422]. This practice continued for 15 years; and, while it operated favorably for innocent persons, it resulted disastrously to the guilty who would not add perjury to the crime charged. Thereupon the legislature, believing that the constitutional provision which declares that 'the accused shall not be compelled to furnish or give evidence against himself,' (Declaration of Rights, § 6,) like the rain descending upon the innocent and guilty alike, and looking to a more careful protection of this right, enacted that 'the fact that the defendant in a criminal prosecution does not testify in his own behalf shall not be evidence of his guilt.' St. 1879, c. 92, § 1; Rev. St. c. 134, § 19. We think the intent of the statute is that the jury, in determining their verdict, shall entirely exclude from their consideration the fact that the defendant did not elect to testify— substantially as if the law did not allow him to be a witness. Com. v. Harlow, 110 Mass. 411; Com. v. Scott, 123 Mass. [239] 241 [25 Am. Rep. 87]."

The action of the 43d General Assembly, ch. 269, in repealing section 13891 of the Code of 1927, would seem to demonstrate that the legislature of Iowa agreed with the supreme court of Maine rather than the Maine legislature. At the time that the legislature of Iowa assumed such position, there was considerable discussion by the bar of this country on this question. In 1931, the American Law Institute approved the following provision: "The judge, the prosecuting attorney and counsel for the defense may comment upon the fact that the defendant did not testify." 9 Proc. Am. L. Inst. 202-218.

The same year, the American Bar Association approved a resolution, proposed by the section on criminal law and criminology, which read as follows:

"That by law it should be permitted to the prosecution to comment to the jury on the fact that a defendant did not take the stand as a witness; and to the jury to draw the reasonable inferences." 56 Reports of A. B. A. 137-152.

The proceedings of the American Bar Association report a vigorous debate presenting both sides of this question. In 1932 and 1933, two articles on this question appeared in the Michigan Law Review. One of them was written by Robert P. Reeder, an attorney in the Department of Justice for the State of Pennsylvania, and was intended to demonstrate that the position of the Law Institute and the Bar Association was contrary to the general rule on the question. 31 Mich. Law Review 40-58. The other article was written by Andrew A. Bruce, Professor of Law, Northwestern University, former Chief Justice of the supreme court of North Dakota, and defended the position taken by the Institute and the Bar Association. 31 Mich. Law Review 226-235. Both of these articles agree that the difference in the rule in the various states is due entirely to the difference in the provisions of the various constitutions and statutes of the several states. Mr. Reeder refers to the rule, prohibiting comment upon the failure of the defendant to testify, as the "general rule", and summarizes the holdings of the various states, at pages 43 and 44, as follows:

"At the present time the laws of forty-two states provide that the failure of the accused to testify shall not create any presumption against him or that it shall not be subject to comment, or contain both such provisions.

"The states which do not conform to the general rule are: Georgia, where the accused is not a competent witness; Iowa, New Jersey, and Ohio, where the constitutions clearly do not prevent comment upon the silence of the accused; Nevada, where the court may not comment upon his silence unless he requests it to instruct the jury upon his right to refrain from testifying; and South Dakota, where a rule which had prevailed since 1879 was changed in 1927 to provide that the failure of the accused to testify in his own behalf was a proper subject of comment by the prosecuting attorney."

The statute, which Mr. Reeder refers to as having been adopted by the legislature of South Dakota, has been declared

to be unconstitutional. State v. Wolfe, 64 S. D. 178, 266 N. W. 116, 104 A. L. R. 464. However, the provision of the South Dakota constitution, upon which the opinion is based, was not the due process clause, but rather section 9 of Article VI, which provided that no person should be compelled, in any criminal case, to give evidence against himself. No such constitutional provision appears in the Constitution of the State of Iowa.

Appellant urges upon us the decision of the South Dakota court in State v. Wolfe, supra, along with numerous other decisions which Mr. Reeder refers to as supporting the ''general rule''. We have carefully and laboriously examined all of the decisions cited by counsel for appellant and the amici curiae. The decisions all construe statutory provisions and constitutional provisions which are not similar to the statutes and Constitution of Iowa. It would unduly prolong this opinion to attempt even a brief review of such decisions. Suffice it to say that we have found no decision from any court holding that the due process clause of a state or the federal Constitution, corresponding to section 9 of Article I of the Constitution of Iowa, prohibits comment upon the failure of a defendant in a criminal case to testify in his own behalf.

Due process of law requires that the accused be properly charged by an indictment or information and be given adequate information in regard to the nature of the charge against him, that he be accorded representation by counsel, a jury trial in open court, and that the state introduce such competent evidence which, if believed, would be sufficient to establish a defendant's guilt beyond a reasonable doubt, without compelling the defendant, against his will, to testify against himself. When this has been accomplished, the defendant must be acorded full opportunity to introduce his evidence to meet that introduced by the State. Defendant may choose to introduce no evidence. He may choose to offer only witnesses other than himself. He may choose to testify in his own behalf. The choice, in each event, is that of the defendant. Having made his choice, if he chooses not to testify in his own behalf, the effect of such choice, as an inference or presumption of guilt, does not come within the contemplation of what constitutes due process of law. If the effect of such choice is to be determined by Constitutional provision, it must be determined by some provision other than the due process clause. If the Constitution

contains only the due process clause, as does our Constitution, then the effect to be given the failure to testify is a matter for the legislature to determine. Were we to sustain appellant's contention herein, the result would be that, under the guise of construing the due process clause, we would, in effect, re-enact section 13891 of the Code of 1927, which the 43d General As-sembly, ch. 269, in 1929, chose to repeal. This we cannot do. There is no merit in appellant's second assignment of error.

III. Appellant's third assignment of error complains of the refusal of the court to give requested instructions Nos. 29, 30 and 35. The purpose of each of these instructions was to re-quire the court to instruct the jury, upon the effect of appel-lant's failure to testify in his own behalf. The requests were properly refused in view of our disposition of appellant's second assignment of error.

IV. Appellant's fourth assignment of error complains of the failure of the trial court to act when the jury bailiff presented to him a memorandum as follows: ''Why did Mr. Ferguson not take the witness stand? Why didn't the attor-neys for the defendant argue the case?'' This memorandum was not addressed to the court, nor to anyone in particular. The court instructed the bailiff to ignore it. There was no error in so doing.

V. In appellant's fifth assignment of error, appellant complains of the fact that the county attorney commented upon the fact that appellant's co-defendant, Ben Ferguson, and his sons, Cleo and Cope Ferguson, did not testify in appellant's be-half. This assignment of error is disposed of by the holding of this court in reference to appellant's assignment No. 2. In addition to that fact, we have been unable to find that the com-plaint, made by appellant in his fifth assignment of error, was presented to the court below.

VI. Appellant's sixth assignment of error complains of the trial court's instructions No. 13 and No. 14. We have care-fully examined said instructions and find that there was no error committed by the court in giving them.

VII. Appellant's seventh assignment of error attacks the court's instruction No. 19. This instruction, of course, must be considered in the light of the other instructions given by the court. When so considered, no error on the part of the trial court appears to have been made.

374

■ VIII. Appellant's eighth assignment of error complains of the refusal of the court to give requested instructions No. 37 and No. 28. The instructions Nos. 11 and 12, given by the court, properly covered the questions involved under the record made herein.

IX. Appellant's ninth assignment of error complains of certain testimony which was offered by the state in connection with the tracing of the cattle involved herein, in an effort on the part of the state to establish that the cattle were the cattle referred to in the information filed herein. We find no error in the introduction of such testimony.

As above stated, we have carefully examined all the assignments of error presented by appellant. The record has been voluminous and we have had the added burden of reading the transcript, in view of a dispute between the parties regarding what the record is. Appellant had a fair trial. The trial court committed no error. The judgment is affirmed.—Affirmed.

MITCHELL, C. J., and STIGER, HALE, BLISS, SAGER, and OLIVER, JJ., concur.